No. 4815.

## CHARLES K. BURDEAU vs. ROBERT DORSEY.

Lyle Saxon for plaintiff.

C. J. Gauthreaux and H. J. Rhodes for defendant.

J. C. Devereaux for appellant.

DUFOUR, J.—The matters alleged as cause for dismissal are of such a nature as to require a thorough examination of the record in order to determine their correctness.

Under such circumstances, our practice is to refer the motion to the merits.

The motion is denied in limine without prejudice.

June 10, 1909.

### On the Merits.

ST. PAUL, J.—On February 13, 1872, by act before Ernest Commagere, notary, Robert Dorsey acquired from B. N. Fortier, two lots of ground in the Seventh District of the City of New Orleans in the square bounded by Burdette, Cypress (now Panola), Ninth (now Sycamore) and Washington (now Fern) Streets, said lots being designated as Nos. 1 and 2, and measuring each thirty feet front on Burdette Street, by one hundred and twenty

— 354 —

feet in depth between parallel lines, Lot No. 1 forming the corner of Burdette and Cypress (now Panola) Streets.

On May 10, 1886, by act before the same notary, Susan Maker, wife of said Dorsey, acquired from the heirs of B. N. Fortier four additional lots in the same square and adjoining the two lots first acquired, said lots being numbered **Three**, Four, Five and Six, and measuring each thirty feet front on Burdette Street, by one hundred and twenty feet in depth between parallel lines. All six lots became community property.

On November 3, 1902, by two acts before Fred Zengel, notary (sale and re-sale), Dorsey and his wife mortgaged said six lots of ground to the Security Building and Loan Association for $600.00, nominally payable on demand, but actually payable in certain weekly installments.

On April 11, 1905, by act before Fred Zengel, notary, said Dorsey and his wife sold to their daughter Louisa Dorsey, widow of Samuel Jenks, all six lots of ground, the consideration being that said Louisa Jenks assumed ''to the complete acquittance and discharge of the vendors, the mortgage and the note representing the same, which said vendors had granted to the Security Building and Loan Association.''

On February 18, 1907, by act before Hy. G. Stewart, notary, said Louisa Jenks mortgaged said six lots to August Chabaud for $700.00, and, on February 20, 1907, by act before Lyle Saxon, notary, she sold the four lots numbered Three, Four, Five and Six, to Albert L. Stewart, the consideration expressed being $1,500.00, of which $200.00 appears to have been paid cash, and the balance was represented by the assumption of the two mortgages, one of $600.00 and one of $700.00, both aforementioned.

On February 21, 1907, Robert Dorsey and his wife brought suit against Louisa Jenks to recover said six lots of ground, and to annul and rescind the Act of April

11, 1905, before Zengel, notary, by which they conveyed said lots to said Louisa Jenks, the cause of action being, as they allege, that they were ignorant and unable to read or write, and said act was not read to them, but they were induced by said Louisa Jenks to sign the same by false and fraudulent representations that the same was a mortgage to secure certain advances for taxes, etc., to be made by her; that they have always remained in possession of said property; that, moreover, said property was then worth between $2,000.00 and $3,000.00, and the "alleged consideration for the alleged sale was far less than one-half the value of said property," and there was thereafter lesion beyond moiety. Notice of this suit was recorded in the Mortgage Office on April 26, 1907.

On the same day (April 26, 1907), by act before Hy. G. Stewart, notary, Albert Stewart sold said four lots to Charles K. Burdeau, his father-in-law, for the express consideration of $1,500.00, of which $500.00 appeared to have been paid cash, and for the balance a note was furnished, payable in one year.

On May 21, 1907, Burdeau brought a petitory action against Dorsey for the recovery of said four lots, Nos. Three, Four, Five and Six.

In answer to the suit of Dorsey, Louisa Jenks set up the verity of the sale to her, the want of fraud or misrepresentation, and the sufficiency of the consideration. In answer to the suit of Burdeau, Dorsey set up substantially the same matters as set up in his petition against Louisa Jenks.

In the court a qua the two suits were tried together. Two separate judgments were rendered. In the suit first filed there was judgment in favor of Dorsey and against Louisa Jenks, recognizing Dorsey as the owner of the six lots in controversy between them, and annull-

ing the act of April 11, 1905, before Zengel, notary, but directing said Dorsey to convey one of said lots (No. Six) to Louisa Jenks in full satisfaction and settlement of all her claims.

In the suit last filed there was judgment in favor of Dorsey, rejecting the demands of Burdeau and annulling the two sales of Louisa Jenks to Albert Stewart, and by the latter to Burdeau.

Burdeau appeals and Dorsey moves to dismiss his appeal for want of jurisdiction in this court. As the only matter in controversy on this appeal is the ownership of the four lots claimed by Burdeau, which the evidence shows to be worth less than $500.00 each, the motion to dismiss is denied. The test of jurisdiction on appeal is the amount involved when the appeal is taken.

On the merits the judgment in favor of Dorsey and against Louisa Jenks was, by consent, between their respective counsel, and, of course, cannot prejudice any of Burdeau's rights whatever they may be; we have eliminated it in our consideration of this appeal.

Parol evidence was admitted touching the nature and circumstances of the conveyance of Dorsey and wife to Louisa Jenks. Such evidence was admissible to show, if it could be done, that the nature and purport of the act was fraudulently misrepresented (see **20 An. 211; 16 An. 307**); but, an examination of the testimony shows that the only witnesses who testified on the subject were the notary, who passed the act, and the vendee, Louisa Jenks. They both testify that the vendors understood perfectly the nature of the act they were signing, and executed the same voluntarily and as in accord with the purpose they had in view.

The charge of fraud is, therefore, not sustained by the evidence, and the understanding by the vendee to assume the outstanding mortgage and pay the same to the ac-

quittance and discharge of the vendors was some consideration, and, therefore, makes the transaction a real one, not a simulation.

On the other hand, parol evidence was not admissible to prove any collateral undertaking entered into by the parties at the time which might operate the same as a counter letter; such evidence was inadmissible even between the parties, a fortiori where third persons were concerned.

> C. C., Arts. 2239, 2266; Hoffman vs. Ackerman, 110 La. 1070; Ackerman vs. Peters, 113 La. 155.

This leaves open only the question of lesion beyond moiety. This cannot be set up as a defense by Dorsey against Burdeau, unless the suit of Dorsey against Jenks was notice to Burdeau and his vendor Stewart; for the action of rescission for lesion beyond moiety is personal between vendor and vendee and not applicable against third persons purchasing in good faith—that is to say, without notice.

> Snoddy vs. Brashear, 3 An. 569, 570; Same vs. Same, 13 An. 469.

Prior to 1898 the mere pendency of a suit was notice to the world (C. C., Art. 2453). In that year (Act 134 of 1898) it was made obligatory in cities of 50,000 inhabitants to register in the proper office a notice of suit in order to bind persons not parties thereto. In 1904 (Act 22 of 1904) a similar registry of notice was made obligatory through the State, where the suit affected real property.

Hence, it is now necessary in order to affect third persons that a so-called notice of les pendens should be registered in the manner required by the statute. Otherwise such persons are not required to take any notice whatsoever of the pendency of said suit.

Where the law requires registry, not even actual knowledge can supply the want thereof. We consider that question settled beyond the possibility of any re-opening.

**Boyer vs. Joffrion, 40 An. 660; Levi vs. Mentz, 23 An. 261.**

Where the law requires registry is it "Aut Caecar aut Nullus." Prove the registry or cease all further attempts at proof, there is nothing that can supply its place.

It is, therefore, wholly immaterial how or when, or wherefore, notice or knowledge came to Stewart or to Stewart's attorney. Stewart bought on February 20th, suit was not filed until February 21st, and the notice not recorded until April 26th.

It is immaterial what Stewart's motives were in hurrying the sale, it is immaterial what pledge might have been given and disregarded, if any such there was; the fact remains that when Stewart acquired there was neither suit pending nor notice of suit recorded. Stewart appeals to the public records and the public records sustain him. And Burdeau, who acquired from Stewart, may rest on Stewart's rights.

We are of opinion that there is error in the judgment of the District Court.

For the reasons assigned, it is ordered that the judgment appealed from be annulled, avoided and set aside and it is now ordered that there be judgment in favor of plaintiff and appellant, Chas. K. Burdeau, and against defendant and appellee, Robert Dorsey, recognizing said Chas. K. Burdeau as owner and entitled to the possession of four lots of ground in the Seventh District of the City of New Orleans, in the square bounded by Burdette, Cypress (now Panola), Ninth (now Sycamore), and Washington (now Fern) Streets, designated as Lots Nos. Three, Four, Five and Six, and measuring each thirty

feet front on Burdette Street, by one hundred and twenty feet in depth between parallel lines. It is further ordered that defendant and appellee, Robert Dorsey, pay the costs of both courts.

November 29, 1909.

## On Rehearing.

ST. PAUL, J.—This case was before us already, and in a general way we adhere to the propositions of law announced in our former opinion as well as to the conclusions of fact therein reached, as far as they go. We think, however, we erred in our application of the law to the facts as found.

We had reached that point in our consideration of the case where we announced that the sale by Robert Dorsey and his wife to Louisa Jenks was neither a fraud nor a simulation, but a genuine transfer, and was subject to attack only on the ground of alleged **lesion beyond moiety**. To all of this we adhere.

We further held that the ground for an attack on the title could not be set up as a defense herein unless Dorsey's suit against Jenks was notice to Burdeau and his vendor Stewart, and we held that it was not.

This was on the theory that notice was not equivalent to registry, a doctrine which has on two late occasions received the unqualified approval of the Supreme Court of the State.

But his rule has an exception, laid down in **McDuffe vs. Walker, 125 La.** —, that, where one has been induced by fraudulent representations and devices to leave his mortgage or title unrecorded (and the same would apply

to a notice of suit), the fact of such non-recordation cannot be taken advantage of by the person whose representations or devices have caused the registry to be omitted.

Accordingly up to the time when counsel representing Dorsey called on counsel representing Louisa Jenks and Albert L. Stewart, and arranged to withhold suit pending an effort to effect a settlement the parties were all entitled to abide by the public records as they then stood, and the whole matter should have been allowed to remain in **statu quo** until these efforts had reached their fruition, or, failing therein, had been discontinued.

But Stewart and Louisa Jenks could not profit by the delay to pass the title from Jenks to Stewart in order to defeat Dorsey's right of action against Jenks.

Again the close connection, and intimate relations existing between Stewart and Burdeau, and the circumstances under which the title passed from one to the other, convince us that the latter merely holds title for the former, or at least that there exist equities between them to be adjusted according to the outcome of this controversy.

We will, therefore, proceed to adjust matters between the parties as they stood after the mortgage and before the sale by Jenks to Stewart.

We find, as a fact, that the sale of the property at the time Louisa Jenks acquired from Dorsey exceeded $1,200, whilst the mortgage debt which she assumed as the sole consideration of the transfer then amounted to only $491.00. There was, therefore, **lesion beyond moiety**, and the transfer must be set aside, but under **Article 1880 of the Civil Code**, we must proceed to an adjustment between the parties.

Now, as between Stewart (or his assignee Burdeau) and Dorsey, the matter stands thus: Before counsel for

Dorsey had determined to file suit, Stewart had already advanced to Louisa Jenks in the mortgage executed by her the sum of $100.00. This sum he is entitled to recover of Dorsey with legal interest from the date of the mortgage, and Dorsey may, if so advised, reclaim the sum of Louisia Jenks. As to the sum of $200.00 which Stewart afterwards paid to Louisa Jenks, for the amount paid by Louisa Jenks on account of the original mortgage granted by Dorsey to the Homestead Association, the judgment between herself and Dorsey awards her one of the lots. On the other hand Stewart paid the balance due on that mortgage amounting to $437.20, which amount he is entitled to recover from Dorsey with legal interest from the date when the payment was made. Finally Stewart is entitled to recover of Dorsey the taxes paid by him with legal interest from the time of such payment. And, for the purpose of this suit, we treat Burdeau and Stewart as one and the same, the former being assignee and successor to all the rights of the latter herein; and we leave them to adjust matters between themselves.

In making this adjustment, it is our desire to terminate this litigation as far as possible, and our endeavor has been to give to each party whatever he may be entitled to as nearly as conditions permit at this time. If we have not succeeded in doing complete justice between them, the parties must attribute it to the conditions as brought about by their own ignorance, cupidity or want of good faith, which all together have combined to produce complications by no means easy to straighten out.

The rights of Dorsey against Jenks, of Stewart against the latter, and of Stewart and Burdeau inter sese, are touched upon only incidentally and for the purpose of adjusting matters as between Burdeau and Dorsey. We do not pass judgment on those matters, neither Stewart

nor Jenks being parties to this particular suit or to this appeal.

It is, therefore, ordered, adjudged and decreed that our former decree be set aside, and it is now ordered that in so far as the judgment appealed from rejects plaintiff's demand to be declared owner and put in possession of the property in controversy, and in so far as the same annuls and sets aside the several transfers under which plaintiff claims, said judgment is affirmed; and, in so far as said judgment fails to adjust the rights between the parties, the same is amended so as to add thereto the following— to-wit: It is further ordered, that the said Chas. K. Burdeau do have and recover of the said Robert Dorsey the sum of one hundred dollars, with legal interest from February 18, 1907, until paid, and the further sum of four hundred and thirty-seven 20/100 dollars, with legal interest from April 26, 1907, until paid; and that the right be reserved to the said Charles K. Burdeau to claim and recover of the said Robert Dorsey all the taxes paid by him, if any, on the property in controversy, with legal interest thereon from time of payment.

It is further ordered that the costs of the court below be paid by plaintiff, Chas. K. Burdeau, and the costs of this appeal by Robert Dorsey, appellee.

April 18, 1910.

Writ denied by Supreme Court May 24, 1910.